UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLEAR BLUE SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

    v.

MICHAEL ROWE, *et al.*,

    Defendants.

Civil Action No. 24-1216 (JEB)

**MEMORANDUM OPINION**

In a separate and ongoing lawsuit before this Court, Michael Rowe has alleged that he was assaulted by several security guards employed by PChange, a company that provides private security services. See Rowe v. PChange, LLC, No. 22-3098. Clear Blue, PChange's insurer, subsequently filed this suit for declaratory judgment, seeking to end its duty to defend and indemnify PChange in that case. Clear Blue alleges that it has already disbursed $50,000 in defense costs and thus satisfied its obligations under the policy, which includes a $50,000 sublimit for claims arising out of assault and battery. Rowe, a Defendant in this case, now asks the Court for leave to amend his Answer to add an affirmative defense that the sublimit is unenforceable as contrary to public policy. As that position is incorrect, however, the Court will deny Rowe's request to amend as futile.

**I.    Background**

Clear Blue issued a general-liability policy to PChange on January 26, 2021, providing coverage from January 20, 2021, to January 20, 2022. See ECF No. 1-1 (Policy) at 2. The

Policy included a general aggregate limit of $2,000,000 and a per-occurrence limit of $1,000,000. See id. It also contained dozens of exclusions, amendments, and coverage limitations, see id. at 5–6 — among them, a coverage limitation as to claims based on any alleged assault and battery. See id. at 58. This assault-and-battery limitation set an aggregate sublimit of $100,000 and a per-occurrence sublimit of $50,000 on such claims. See id.; see also ECF No. 1 (Compl.), ¶ 73 ("[T]he Underlying Lawsuit arises out of a single occurrence of 'assault' and 'battery'; therefore the Policy's Assault and Battery Aggregate Limit does not apply here, and all claims in the Underlying Lawsuit are subject to the Policy's $50,000 Assault and Battery Limit.") (citation omitted).

In the underlying litigation, Rowe alleges that, on October 26, 2021, he was assaulted by special police officers employed by PChange at his mother's apartment complex in Southeast Washington. Rowe v. PChange, LLC, 2024 WL 1655348, at *1–2 (D.D.C. Apr. 17, 2024). He filed that lawsuit in October 2022, and his multiple claims for damages remain intact. See id. at *1. Clear Blue alleges that, in the course of that litigation, it has paid at least $50,000 for PChange's defense costs. See Compl., ¶ 74. Since that amount exhausted the sublimit, Clear Blue filed a Complaint for Declaratory Judgment on April 24, 2024. See Compl. at 28. In Rowe's Answer, he raised two affirmative defenses. See id. at ECF No. 30 (Answer) at 20. First, he asserted that the Court lacks jurisdiction, apparently alleging that Clear Blue lacks standing, id. ("[T]here is no actual controversy between Clear Blue and Rowe . . . ."), and that "[t]he case is not ripe." Id. Second, he contended that Clear Blue had failed to state a claim upon which relief could be granted. Id. Five weeks later, he filed this Motion, seeking to add a third affirmative defense — that the assault-and-battery sublimit is unenforceable as contrary to public policy. See ECF No. 43 (Mot.).

2

## II.  Legal Standard

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, this Court "should freely give leave [to amend a pleading] when justice so requires."  Such leave generally should be granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Amendment should not be permitted, however, if it would be futile.  See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (citing Foman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); Fleck v. Cablevision VII, Inc., 799 F. Supp. 187, 192–93 (D.D.C. 1992) (denying motion to amend answer "because the amendment would prove futile").  When the defendant seeks to add affirmative defenses that are "meritless as a matter of law, there is no need for the Court to consider whether [the defendant] has pled sufficient facts to substantiate them."  United States v. All Assets Held at Bank Julius, 229 F. Supp. 3d 62, 71 (D.D.C. 2017).

## III.  Analysis

In seeking to amend, Rowe maintains that the $50,000 sublimit is contrary to public policy.  See Mot. at 3–4.  "A promise or other term of an agreement is unenforceable on grounds of public policy if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."  Samuels v. S. Hills Ltd. P'ship, 289 F. Supp. 3d 26, 31 (D.D.C. 2017) (cleaned up) (citing Restatement (Second) of Contracts § 178 (Am. L. Inst. 1981)).  Rowe contends that the sublimit, if enforced, would undermine D.C. Municipal Regulations on private security agencies, see Mot. at 3–4, which the District requires

to be licensed. See D.C. Mun. Regs. tit. 17, § 2124.1; Perez v. C.R. Calderon Constr., Inc., 221 F. Supp. 3d 115, 154 (D.D.C. 2016) ("[C]ontracts made in violation of a licensing statute designed to protect the public will usually be considered void and unenforceable.") (internal quotation marks and citation omitted). Among other prerequisites to licensure, "[a] security agency that employs five (5) or more individuals as security officers shall maintain general liability insurance in an amount not less than $250,000 per occurrence and $600,000 in the aggregate." D.C. Mun. Regs. tit. 17, § 2127.6.

The parties first disagree as to whether the insurance requirement even applies to PChange. Clear Blue notes that Section 2127.6 governs only security agencies that employ five or more individuals "as security officers," and PChange's special police officers are expressly excluded from the regulatory definition of "security officer." See ECF No. 44 (Opp.) at 3–4 (citing D.C. Mun. Regs. tit. 17, § 2100.3). Rowe counters that he should again be granted leave to amend, either because PChange's SPOs do count for the general-liability provision or, at least, because he is "entitled to discovery" to prove that PChange employs at least five non-SPOs who qualify as "security officers." ECF No. 45 (Reply) at 4–5. The Court need not wade into these murky waters to resolve the Motion, however, because it will assume that Section 2127.6 does apply to PChange.

Even granting that assumption, Clear Blue asserts that the Policy nonetheless complies because it provides $1,000,000 per-occurrence and $2,000,000 aggregate limits, "far exceed[ing]" the statutory minima of $250,000 and $600,000. See Opp. at 5; see also Policy at 2. Rowe protests that the $50,000 sublimit "was designed to evade, or has the actual effect of evading, the DCMR requirements and the public policy objectives of those requirements." Mot. at 4. The Court will assess only the validity of this sublimit because, in Rowe's own words, he

"does not argue that the whole Policy violates the DCMR requirement, but simply that the Assault and Battery sublimit does." Reply at 7.

Clear Blue has the stronger position here. To start, the chapter regulating security agencies is silent as to sublimits. See D.C. Mun. Regs. tit. 17, ch. 21. Rowe nonetheless asserts that the sublimit "evade[s]" the "public policy objectives" behind the general-liability coverage mandate. See Mot. at 4. To invalidate the sublimit on this basis, the Court would need to find that "the interest in [the sublimit's] enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Samuels, 289 F. Supp. 3d at 31 (emphasis added) (quoting Jacobsen v. Oliver, 555 F. Supp. 2d 72, 79 (D.D.C. 2008)). The legislature's intent to prohibit insurance sublimits in the private-security context, however, is far from obvious. Despite Rowe's diligent analysis of legislative history, see Reply at 7–8, and inclusion of a 41-page committee report of the D.C. Council, see ECF No. 45-1 (Committee Rpt.), the Court can discern no such purpose. The Committee apparently never considered sublimits and only occasionally alluded to the appropriateness of a general-liability insurance mandate — though even that discussion was terse. See, e.g., Committee Rpt. at 2–6, 19. Without mentioning sublimits, it simply concluded that Section 2127.6 "require[d] a security agency that employs five or more individuals as security officers to maintain general liability insurance." See id. at 6. In other words, the regulation prescribes only what Clear Blue says it does. See Opp. at 5–6. Rowe's amendment is therefore futile because, despite careful examination, the Court can discern no public policy interest that "clearly outweigh[s]" the interest in enforcing the sublimit. Samuels, 289 F. Supp. 3d at 31 (quoting Jacobsen, 555 F. Supp. 3d at 79).

Rowe's case citations do not alter this outcome. See Reply at 6–7. In Smalls v. State Farm Mutual Automobile Insurance Co., 678 A.2d 32 (D.C. 1996), for example, the D.C. Court

5

of Appeals held that an auto-insurance exclusion for the insured's family was invalid insofar as it allowed insurers to provide less coverage than the amount required by the No-Fault Motor Vehicle Insurance Act. The transparent difference between Smalls and this case, however, is that the No-Fault Act explicitly proscribed coverage carve-outs. See id. at 36 (quoting D.C. Code § 35-2106(c)'s requirement that "any liability of an insured . . . shall be paid by the insurer up to the amount established by the policy"). Smalls thus held a coverage exclusion unenforceable because it clearly contravened the text of a statute, which Rowe does not — and cannot — argue here.

He further fails to persuasively rebut Clear Blue's assertion that "[n]o case in the country has held an assault and battery sublimit in an insurance contract violates public policy." Opp. at 6. Rowe gives the Court no reason to be the first to so hold.

## IV. Conclusion

For the foregoing reasons, the Court will deny Rowe's Motion for Leave to Amend without prejudice. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 20, 2024